IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAMEL KEVIN JONES,<br>    Plaintiff | : <br> : <br> : |
| v. | :    CIVIL ACTION NO. 19-CV-6014 |
| | : |
| KYLE RUSSEL, *et al.*,<br>    Defendants | : <br> : |

## MEMORANDUM

**PRATTER, J.**                                                                         **MAY 28, 2020**

Kamel Kevin Jones, a convicted inmate who, at the time he filed this action was incarcerated at Lehigh County Prison ("LCP"), has commenced a *pro se* civil rights action pursuant to 42 U.S.C. §1983.[1] He sued Kyle Russel, Warden at LCP, Ida Gardner, a phlebotomist at LCP, Owen Rothrock, an LCP Processing Officer, Sgt. Amanda Mead, a floor supervisor at LCP, Douglas Mette, an LCP Grievance Coordinator, and Officer Richard J. Reis of the Catasauqua Police Department. For the following reasons, the Complaint will be dismissed in part with prejudice and in part without prejudice pursuant to the Court's obligations under 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.    FACTUAL ALLEGATIONS[2]

Mr. Jones alleges that he was arrested on a charge of driving under the influence on June 16, 2019 and brought to LCP where, without his consent, Nurse Delacruz drew blood from him. (ECF No. 2 at 5.)[3] Delacruz allegedly told Mr. Jones that the blood draw was for prison medical

---

[1] A search of public records indicates that Mr. Jones was released from LCP on April 8, 2020.

[2] The allegations set forth in this Memorandum are taken from Mr. Jones's Complaint.

[3] The Court adopts the pagination supplied by the CM/ECF docketing system.

purposes. (*Id.*) According to Mr. Jones, Defendant Gardner is listed as the phlebotomist on the DUI blood alcohol report used in his criminal case, and he alleges that Ms. Gardner engaged in medical malpractice and violated his Fourth Amendment rights. (*Id.*) Mr. Jones also asserts that Defendant Reis, the arresting officer in his case, conspired with Defendants Gardner and Rothrock to fabricate the document used in his criminal case, and that allegedly Officer Reis admitted at a suppression hearing that he did not respect Mr. Jones's due process rights during the arrest. (*Id.*)

Mr. Jones also describes an incident that occurred while he was in medical quarantine prior to being admitted to the general population at LCP. He asserts that an Officer Mako was rude to him when he took a drink of water. She allegedly asked him to leave the area and, when Mr. Jones asked to speak with her supervisor, she reported a fight between an officer and inmate over her radio. (*Id.* at 6.) He alleges he was "ambushed" by 15-20 unnamed officers. (*Id.*) Sgt. Mead allegedly believed the version of events related by the officers even though she was not present and ordered Mr. Jones back to the medical quarantine area where he was not fed until well past the normal mealtime. (*Id.*) While there, he was locked in his cell and not allowed to take a shower or make phone calls "for days." (*Id.*) An unnamed nurse reportedly performed a psychological check for self-harm. Mr. Jones told her that he was thirsty, but she did not bring him water. (*Id.*)

On June 20, 2019, Mr. Jones was released from medical quarantine and placed in a disciplinary segregation cell block. He received a misconduct hearing the next day where an unnamed lieutenant authorized that Mr. Jones return to the general population. (*Id.*) Mr. Jones claims that his prison records incorrectly show that he was placed in the general population on June 18, rather than June 21, which he asserts violated his Eighth Amendment and due process rights. (*Id.*)

2

Mr. Jones describes another incident that he says occurred on September 19, 2019. He admits that, against regulations, he covered the gate on his cell door with a sheet of paper so that he would have privacy while using the toilet. (*Id.*) An Officer Kaiser banged on the cell door and pulled down the paper. Sgt. Mead responded to the incident and escorted Mr. Jones to a disciplinary housing cell where he remained for 14 days, charged with a minor infraction. (*Id.*) He alleges that Sgt. Mead later interfered with his effort to obtain prison employment, telling the unnamed decision-maker that Mr. Jones was not entitled to privileges, even though Mr. Jones had "stayed misconduct free" for the number of days required to merit prison employment. (*Id.*)

In the final incident described by Mr. Jones he alleges that he was awakened by Sgt. Rossato with a threatening ultimatum to turn down the volume on his television. (*Id.*) Mr. Jones filed a grievance about Sgt. Rossato, but no investigation was conducted before the grievance was rejected by Grievance Co-Ordinator Mette. (*Id.*) The only allegation concerning Warden Russel is that, as warden, he runs LCP. (*Id.*)

The Court may consider matters of public record as part of the process of evaluating a *pro se* §1983 complaint. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). A search of public records indicates that Mr. Jones was arrested on June 16, 2019 in Lehigh County on charges of driving while under the influence of alcohol and related offenses. *See Commonwealth v. Jones*, CP-39-CR-2754-2019. Officer Reis is listed as the arresting officer. (*Id.*) The trial court conducted a suppression hearing on November 1, 2019. (*Id.*) Thereafter, on January 7, 2020, Mr. Jones entered a plea of guilty and was sentenced to a term of one to two year's imprisonment, to be followed by five-year term of probation. (*Id.*)

## II. STANDARD OF REVIEW

Because Mr. Jones was unable to pay the filing fee in this matter, the Court granted him leave to proceed *in forma pauperis*.[4] (ECF No. 5.) Accordingly, 28 U.S.C. §1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the complaint if it fails to state a claim. Whether a complaint fails to state a claim under §1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* Mr. Jones is proceeding *pro se*, so the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Claims Involving the Blood Draw

The only allegation concerning Ms. Gardner is that she is listed as a phlebotomist on a document used in Mr. Jones's criminal case. Defendants Gardner, Reis and Rothrock are alleged to have fabricated a document used in Mr. Jones's criminal case, and Officer Reis allegedly admitted at a suppression hearing that he did not "respect" Mr. Jones's due process rights during the arrest. Because the claims against these defendants assert that Mr. Jones's arrest or the blood draw constituted an illegal seizure under the Fourth Amendment, the claims would necessarily

---

[4] Because Mr. Jones was incarcerated when he filed this action, under the provisions of the Prison Litigation Reform Act, he must still pay the full filing fee in installments.

imply the invalidity of Mr. Jones's DUI conviction. Thus, these claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the United States Supreme Court held that where the unlawfulness upon which a §1983 action is based would render a conviction or sentence invalid, a §1983 plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Id.* at 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's §1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)).  Here, Mr. Jones asserts that the blood draw, upon which his DUI charges were presumably based, violated his search and seizure rights.  However, the state court docket from his criminal case shows that the court conducted a suppression hearing and that Mr. Jones later entered a plea of guilty to the DUI charges.  The state court docket also reflects that the conviction remains intact.  Accordingly, the claims against Defendants Gardner, Reis and Rothrock based on the alleged invalidity of the post-arrest blood draw are barred by *Heck* and dismissed without prejudice pursuant to 29 U.S.C. §1915.

    **B.**    **Claims Against Sgt. Mead**

Mr. Jones alleges three incidents involving Sgt. Mead that he asserts violated his due process rights.  First, she did not believe Mr. Jones's version of events that he had been "ambushed" by 15-20 unnamed officers when she ordered him back to the medical quarantine area, yet her account against Mr. Jones was not believed by a hearing officer.  Second, she

responded to the incident involving Mr. Jones's obscuring the view of the interior of his cell with a sheet of paper and escorted Mr. Jones to a disciplinary housing cell where he remained for 14 days, after being charged with an infraction. Third, Sgt. Mead later allegedly interfered with Mr. Jones's effort to obtain prison employment. These allegations do not state a plausible constitutional violation, either separately or together.

While Mr. Jones asserts that Sgt. Mead disbelieved his version of events she had not witnessed, he concedes that he was exonerated of whatever charge Sgt. Mead asserted in a hearing that occurred the next day. He also does not allege that he was placed in disciplinary segregation over the incident, but rather was held in quarantine and then released to the general population. The protections of the Due Process Clause are triggered only if there is a deprivation of a protected interest in life, liberty, or property. *See Mitchell v. Horn*, 318 F.3d 523, 531 (3d Cir. 2002). For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Because Mr. Jones fails to allege that Sgt. Mead's actions in this incident caused him an atypical deprivation, the claim is not sustainable.

In the second incident, Mr. Jones was placed in administrative custody for 14 days for conduct that he admits violated prison rules. His only allegation against Sgt. Mead is that she escorted him to the cell block. Even if Sgt. Mead was allegedly responsible for this disciplinary placement it would not be enough to trigger a protected liberty interest. *See Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (holding seven months in disciplinary custody did not implicate liberty interest); *Torres v. Fauver*, 292 F.3d 141, 151-52 (3d Cir. 2002) (holding disciplinary detention for 15 days and administrative segregation for 120 days did not implicate liberty interest); *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (holding administrative detention

for 15 months did not implicate liberty interest). Accordingly, Mr. Jones's allegations in this portion of the Complaint fail to state a plausible claim.

The third incident also fails to state a cognizable claim. The United States Court of Appeals for the Third Circuit has held that prisoners "have no liberty interest in their [] job assignments arising directly from the Due Process Clause itself." *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989). Neither does the denial of a prison job create any Eighth Amendment issues. *Watson v. Sec'y, Pennsylvania Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) (to violate the Eighth Amendment, conduct must result in the denial of the "minimal civilized measure of life's necessities" such as food, warmth, or exercise; a prison job is not "one of life's necessities." (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). Accordingly, Sgt. Mead's alleged efforts to deny Mr. Jones prison employment could not provide a plausible basis for a constitutional claim. Because none of the claims against Sgt. Mead are plausible, and it appears that any attempt to amend them would prove futile, the claims are dismissed with prejudice.

### C. Claim Against Defendant Mette

The claim against Douglas Mette involves his response to a grievance filed by Mr. Jones. This claim is not plausible. Claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, the facts alleged by Mr. Jones concerning Mr. Mette's handling of his grievance does not give rise to a plausible basis for a constitutional claim, and the claim will be dismissed with prejudice.

### D. Claims Against Defendant Russel

Other than including Warden Russel in the caption of the Complaint, Mr. Jones's only assertion involving him is that, as warden, Mr. Russel runs LCP. There are "two general ways in

7

which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Mr. Jones has failed to allege that Warden Russel was personally involved in any of the incidents he describes in his complaint. He also fails to allege Warden Russel acted with deliberate indifference when he formulated a policy, practice or custom that caused Mr. Jones constitutional harm.[5] Moreover, because none of the other allegations against other prison officials are plausible, there is no basis to grant Mr. Jones leave to amend his supervisory liability claim to attempt to cure these defects.

---

[5] To the extent that any claims against Sgt. Mead are based on her supervisory authority at LCP, those claims are also implausible. For example, although Mr. Jones alleges he was not fed in the medical quarantine area after being escorted there by Sgt. Mead until well after the usual meal time, and was locked in his cell and not allowed to take a shower or make phone calls "for days," there is no allegation that Sgt. Mead was responsible for conditions in the medical quarantine area or was responsible for the policies in the medical quarantine area. Accordingly, the allegations about conditions in the medical quarantine area do not state a plausible claim against Sgt. Mead.

## IV.  CONCLUSION

For the reasons stated, Mr. Jones's Complaint will be dismissed pursuant to §1915(e)(2)(B). An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER, J.